***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
Based upon all of the competent evidence adduced at the hearing before the Deputy Commissioner and from the record, the Full Commission makes the following:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant and plaintiff at all relevant times.
3. Defendant was an approved self-insured with Crawford Company acting as it servicing agent at all relevant times.
4. Plaintiff's average weekly wage will be determined from a Form 22 to be submitted by defendants.
5. Plaintiff sustained an injury by accident while in the course and scope of employment with defendant on 1 September 1999, when the tractor-trailer he was riding in flipped over.
 ***********
Based upon all the competent evidence of record herein, the Full Commission enters the following:
 FINDINGS OF FACTS
1. It is noted by the Full Commission that the Stipulations contained in the Opinion and Award filed by the Deputy Commissioner differ from those contained in the Pre-trial Agreement signed by the parties. However, as neither party has assigned error to the change in the Stipulations, the Full Commission accepts the Stipulations as entered by the Deputy Commissioner.
2. Plaintiff was a 58 year old man at the time of the hearing before the Deputy Commissioner and had completed eight years of formal education. Plaintiff began working for defendant in 1999, as a long distance truck driver.
3. On 1 September 1999, plaintiff and his co-worker, Ronnie Gammons, left Jerome, Idaho in a 53 foot tractor-trailer in the course of their employment with defendant. Mr. Gammons was driving, and plaintiff went to sleep in the sleeping compartment. Some time later, Mr. Gammons fell asleep while driving the truck and lost control of the vehicle, causing it to flip over. Plaintiff was taken to Bannock Regional Medical Center in Pocatello, Idaho, where he was treated by Dr. Chris Stegmire in the emergency room. Plaintiff was diagnosed with left hip contusion, left chest wall contusion and microscopic hematuria. Plaintiff was released and returned to North Carolina by bus.
4. On 6 September 1999, plaintiff was treated at Wake Forest University Baptist Medical Center due to continuing pain in his left hip and along his left lower ribs. X-rays were taken of plaintiff's left tibia-fibula, femur and knee, and he was referred to Dr. Walton W. Curl, an orthopedic surgeon. On 15 September 1999, plaintiff presented to Dr. Curl. Dr. Curl found that plaintiff had a contusion of the left thigh which caused a hematoma, a fracture of his left ribs and other smaller injuries. Dr. Curl also noted that plaintiff had the pre-existing condition of osteomyelitis, an infection in the bones of plaintiff's left leg, which had been present since a previous accident.
5. Dr. Curl treated plaintiff with medications, including vicodin, valium and keflex. Plaintiff had been taking vicodin, valium and tetracycline at the time of his injury by accident on 1 September 1999, to control his pre-existing osteomyelitis. Dr. Curl opined that plaintiff's accident did not aggravate or accelerate plaintiff's pre-existing osteomyelitis.
6. Dr. Curl continued to treat plaintiff through April 2000, during which time plaintiff's hematoma improved and his pain diminished. On 5 April 2000, plaintiff complained of shoulder pain which Dr. Curl attributed to plaintiff's use of a cane to walk. Dr. Curl recommended physical therapy and continued plaintiff's medications.
7. Dr. Curl has not examined plaintiff since 5 April 2000, but continues to renew his prescriptions. Dr. Curl testified that he released plaintiff from treatment for the injuries he sustained as a direct result of the accident of 1 September 1999, on or about 5 April 2000. Dr Curl was of the opinion that plaintiff did not suffer any permanent partial impairment as a result of the hematoma he sustained.
8. Dr. Curl has not determined whether plaintiff has reached maximum medical improvement, but he is of the opinion that any disability plaintiff may continue to suffer is not related to the injuries he sustained on 1 September 1999. Because there has been no determination as to whether plaintiff has reached maximum medical improvement, the Full Commission must defer ruling on the issue of any permanent partial disability plaintiff may be entitled to pending the submission of pertinent medical evidence.
9. In December 1999, while plaintiff was out of work due to his compensable injury, he suffered a slight stroke for which he sought treatment from Dr. Catalin Burciu. Dr. Burciu noted that plaintiff had a number of risk factors for a stroke, including hypertension, elevated cholesterol and cigarette smoking. Dr. Burciu was of the opinion that plaintiff's stroke was unrelated to his accident of 1 September 1999.
10. On 1 August 2000, defendant filed a Form 61 Denial of Workers' Compensation Claim.
11. Pursuant to the Form 22 Wage Chart filed by defendant in this case, plaintiff's average weekly wage at the time of his admitted injury by accident on 1 September 1999 was $604.80 per week, yielding a compensation rate of $403.22 per week.
12. Lee Smith owned and operated Smith Brothers Trucking. Mr. Smith owned the truck plaintiff was riding in at the time of his injury; he procured all of the contracts for the freight that was being delivered and picked up; he determined the route of travel and Mr. Gammons and plaintiff were required to maintain contact with Mr. Smith while driving. Plaintiff was paid by Mr. Smith for the number of miles he drove. Plaintiff and the other 75 employees of Mr. Smith did as they were told and Mr. Smith made the decisions as to what was to be done and by whom. Therefore, plaintiff was an employee of Smith Brothers Trucking at the time of his injury by accident.
13. At the hearing before the Deputy Commissioner, defendant presented as its defense that plaintiff was an independent contractor and not an employee of Smith Brothers Trucking. At the close of the hearing, the Deputy Commissioner found that no evidence had been presented to support the defense. Accordingly, the Deputy Commissioner awarded attorney fees to plaintiff as part of costs for stubborn, unfounded litigiousness on the part of defendant. Defendant did not appeal from that portion of the Award of the Deputy Commissioner.
14. In its appeal to the Full Commission, defendant did not argue the employment status of plaintiff, but limited its contentions to whether plaintiff was disabled following his 1 September 1999 injury by accident and thus eligible for indemnity compensation under the Act.
 ***********
Based upon the foregoing Stipulations and Findings of Facts, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on 1 September 1999 while in the course and scope of employment with defendant. As a result of plaintiff's injury by accident, he is entitled to receive workers' compensation benefits for the period of time during which he was disabled as defined by the Act. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to payment for the medical expenses he incurred for the treatment of the injuries sustained in the 1 September 1999 accident. N.C. Gen. Stat. § 97-25.
3. Plaintiff is entitled to receive total disability benefits from 1 September 1999 until 5 April 2000, when he was released from the care of Dr. Curl. Plaintiff has failed to show by the greater weight of the evidence that he continued to be disabled subsequent to his release by Dr. Curl on 5 April 2000. Further, plaintiff has failed to show by the greater weight of the medical evidence that the minor stroke he suffered in December 1999 was causally related to his compensable injury by accident. N.C. Gen. Stat. § 97-29.
4. Plaintiff's average weekly wage at the time of the injury by accident was $604.80 per week, yielding a compensation rate of $403.22 per week. N.C. Gen. Stat. § 97-2(5).
5. Plaintiff is entitled to payment by defendant of plaintiff's attorney fees as costs incurred through the date of the hearing before the Deputy Commissioner, on grounds of unfounded and stubborn litigiousness. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to counsel fees hereinafter approved, defendant shall pay to plaintiff total disability benefits at the rate of $403.22 per week from 1 September 1999 through 5 April 2000. The compensation shall be paid in a lump sum.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury when bills for same have been submitted and approved through procedures adopted by the Industrial Commission.
3. A reasonable attorney's fee of 25% of the amount awarded to plaintiff in Paragraph 1 is hereby approved for plaintiff's counsel to be paid by defendant as a part of costs and shall not be deducted from plaintiff's award of compensation. The fees shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs of this action, including the attorney's fees awarded in Paragraph 3 above.
5. The issue of whether plaintiff sustained any permanent partial disability as a result of his compensable injury is reserved for subsequent determination.
This the ___ day of June, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN